

**IT IS ORDERED as set forth below:**

**Date: September 6, 2019**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NO. **19-52577-PMB** |
| | : | |
| **GMI GROUP, INC.,** | : | CHAPTER 11 |
| | : | |
| Debtor. | : | |
| | : | |
| **GMI GROUP, INC.,** | : | |
| | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING |
| | : | |
| v. | : | NO. **19-5140** |
| | : | |
| **EXPANSION CAPITAL GROUP, LLC,** | : | |
| | : | |
| Defendant. | : | |

**ORDER (I) GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS AND (II) DENYING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II**

This matter (the "Adversary Proceeding") comes before the Court on the following:

the (i) *Motion of Expansion Capital Group, LLC to Dismiss The Complaint Pursuant to Rule 12*

*(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy*

*Procedure For Failure to State a Claim on Which Relief Can Be Granted* (the "Motion to Dismiss")

filed by the above-referenced Defendant ("Defendant") on April 11, 2019 (Docket No. 6);[1] and the

(ii) *Plaintiff's Motion for Summary Judgment on Counts I and II, and Response to Defendant's*

*Motion to Dismiss* (the "Summary Judgment Motion"), filed by the above-referenced Plaintiff-

Debtor (the "Debtor") on April 25, 2019 (Docket No. 8).[2]  The Motion to Dismiss seeks dismissal

of the complaint filed by the Debtor that commenced this Adversary Proceeding (Docket No. 1-

1)(the "Complaint").  The Summary Judgment Motion seeks summary judgment on Counts I and

II of the Complaint.

## I.  Background

        The genesis of this Adversary Proceeding is a "Commercial Loan and Security Agreement"

(the "Agreement")(Ex. A, Docket No. 1), dated July 10, 2018, in which Defendant agreed to lend

$100,000 to the Debtor (the "Loan").  The Debtor actually received $98,001, as a $1,999 fee was

deducted from the loan proceeds.  The Loan was to be repaid in 180 business days through daily

debits of $738 from a specified bank account of the Debtor.  *See* Agreement, p. 1 (Payment

Schedule); p. 2, ¶4.  The Agreement provided for 180 debits of $738 followed by a final debit of

---

[1] Defendant filed the following additional pleadings in connection with the Motion to Dismiss: (i) *Memorandum in Support of Motion to Dismiss Plaintiff GMI Group, Inc.'s Verified Complaint* (Docket 6-1)(the "Defendant's Memorandum of Law"), and (ii) *Expansion Capital Group, LLC's Reply in Support of its Motion to Dismiss* (Docket No. 12)(the "Defendant's Reply").  Defendant also filed *Defendant Expansion Capital Group, LLC's Opposition to Plaintiff's Motion for Summary Judgment*, on May 16, 2019 (Docket No. 13) in response to the Summary Judgment Motion ("Defendant's Opposition").  Defendant's Opposition included the *Declaration of Tim C. Mages In Support of Defendant Expansion Capital Group, LLC's Oppossition* (sic) *to Plaintiff GMI Group, Inc.'s Motion for Summary Judgment* (Docket No. 13-1)(the "Mages Affidavit") and *Defendant's Response to Plaintiff's Statement of Material Facts and Statement of Additional Material Facts* (Docket No. 13-2)(the "Response to Facts").  All of these pleadings were considered in connection with this Order.

[2] The Debtor supplemented its Summary Judgment Motion, and replied to the Motion to Dismiss, with its: (i) *Memorandum of Law Supporting Plaintiff's Motion for Summary Judgment and Response to Defendant's Motion to Dismiss* (Docket No. 9)("Debtor's Memorandum of Law"), (ii) *Plaintiff's Statement of Material Factc* (sic) *in Support of Plaintiff's Motion for Summary Judgment* (Docket No. 10), (iii) *Supporting Affidavit of Kayla Dang* (Docket No. 11), and (iv) *Plaintiff's Reply in Support of its Cross-Motion for Summary Judgment on Counts I and II* (Docket No. 14)(the "Debtor's Reply").  All of these pleadings were considered in connection with this Order.

$160. *Id*.  The Debtor's principal, Kayla Dang ("Ms. Dang"), personally guaranteed the Debtor's performance under the Agreement (the "Guaranty")(Ex. A, Docket No. 1, pp. 20–22).  Defendant was also granted a security interest in the collateral enumerated in the Agreement and was authorized to file a UCC-1 financing statement evidencing its security interest.  *See* Agreement, ¶5. The Debtor indicates in the Complaint that at least one UCC-1 financing statement has been filed against it, but it is not in the name of Defendant.  (Complaint, ¶ 10).  The Debtor also asserts that it paid Defendant $70,510 with regard to the Loan, and should owe Defendant, at most, $29,490. Complaint, ¶¶ 22(b), (d); 28(b), (d); 32; Request for Relief, (1)(f).

## II. The Adversary Proceeding

In the Complaint, the Debtor asserts the following counts against Defendant: (i) Count I for a breach of a legal duty related to criminal usury under Georgia law; (ii) Count II for a breach of a private duty related to criminal usury under Georgia law; (iii) Count III for unjust enrichment; (iv) Count IV for a declaratory judgment as to the validity, priority, or extent of the security interests of Defendant; (v) Count V for claims issues related to any claim filed by or on behalf of Defendant in the underlying bankruptcy case; and (vi) Count VI for unconscionability.

### a. The Motion to Dismiss

In the Motion to Dismiss, Defendant seeks dismissal of the Adversary Proceeding.  As to Counts I and II related to criminal usury, Defendant argues that these Counts fail for two primary reasons: (1) the parties chose to apply South Dakota law to the Agreement, and Georgia law permits such an election; (2) Georgia choice of law would apply South Dakota law, as the place of the contract, to the Agreement even in the absence of an agreement to do so.  Because South Dakota has no usury limitation, Counts I and II fail.

As to Count III for unjust enrichment, Defendant asserts that, because a legal contract exists between the parties, there can be no claim for unjust enrichment.[3]  Defendant argues, as to Count IV to determine the validity, priority or extent of Defendant's security interests, that there is no basis to deny its secured claim, since all of the Debtor's issues with Defendant's claim rely on the Loan being usurious, which it is not.  As to Count V for claim issues, Defendant notes that it has not yet filed a claim and asserts that it would not be proper for the Debtor to file a claim on Defendant's behalf, as a deadline to file claims has not yet expired.[4]  With regard to Count VI for unconscionability, Defendant argues that, because the interest rate charged in the Agreement complies with South Dakota law, which Georgia allows (or compels) the parties to choose, it cannot be unconscionable.

### b. Motion for Summary Judgment/Response to Motion to Dismiss

In the Motion for Summary Judgment, the Debtor seeks summary judgment as to Count I (legal duty/criminal usury) and Count II (private duty/criminal usury) of the Complaint and opposes the Motion to Dismiss.  In seeking summary judgment, the Debtor asserts that the Court should look to Georgia law because looking to South Dakota law would violate Georgia's strong public policy against usury.  Looking at Georgia law, the Debtor asserts that the payments required by the Agreement and related documents resulted in an interest rate in excess of the rate permitted by O.C.G.A. § 7-4-18(a).

Regarding the Motion to Dismiss Count III, the Debtor asserts that, because the Agreement is usurious under Georgia law, there is no enforceable agreement regarding the Loan, and a claim

---

[3] The Debtor admits that this statement of the law is correct.  Debtor's Memorandum of Law, p. 9.  The Debtor asserts, in response, that the Agreement is not valid because it is usurious.

[4] That was true when the Motion to Dismiss was filed.  Since then, the Debtor has moved to establish such a deadline (Docket No. 102), and the Court established August 31, 2019 as the date by which claims must be filed (Docket No. 103).  On August 28, 2019, Defendant filed a Proof of Claim (Claim No. 21)(the "Proof of Claim").

for unjust enrichment can be maintained.  The Debtor does not explain, however, how receiving $70,510 after having advanced $98,001 to the Debtor has "unjustly enriched" Defendant.

As to Count IV, the Debtor asserts that all interest should be forfeited because the Loan is usurious, and because Defendant has not filed or set forth evidence of a properly perfected security interest, its claim should be held to be unsecured.  As to Count V, the Debtor asserts it may file a claim for Defendant, and that the claim of Defendant should be valued, and its secured status be determined, pursuant to Counts IV and V.  As to Count VI, the Debtor asserts that the Debtor was in dire need of the Loan, and that Defendant took advantage of that need by making it a South Dakota loan.

### c. Defendant's Response to Motion for Summary Judgment

In response to the Motion for Summary Judgment, Defendant restates the arguments that it says justify dismissal of Counts I and II—that either by agreement of the parties or the place of contract, South Dakota law applies to the Agreement, and South Dakota law has no limit on the rate of interest that Defendant can charge.  Defendant notes that a few of the facts upon which the Debtor relies in saying the place of contract is Georgia are not relevant to that analysis.  Then Defendant claims that, even if the Court finds that Georgia law applies, the Loan is not usurious because the Debtor made a mathematical error in its calculations.  In support of that assertion, Defendant cites to its Response to Facts, ¶6 and to the Mages Affidavit, ¶12, which demonstrate that the actual annual interest rate, when calculated by reference to business days rather than calendar days (as required by the Agreement) is 47.8%, not the 66% asserted by the Debtor.  At 47.8% per annum, the Loan is not usurious even under Georgia law.

After explaining that the place of solicitation of the Loan is not relevant to a choice of law analysis, and that the Agreement was actually executed in South Dakota, Defendant returns to the

miscalculation issue again, outlining how the Agreement does not violate O.C.G.A. § 7-4-18 even if Georgia law applies.

### d. *The Debtor's Reply and Defendant's Reply*

In the Debtor's Reply, it argues that the Court should not respect the choice of law provisions in the Agreement because they contravene Georgia public policy. The Debtor then asserts that the place of funding cannot be used to abrogate Georgia jurisdiction over lending transactions like the Loan. Finally, the Debtor, citing *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 392 S.E.2d 242 (1990), asserts that the Loan is usurious under Georgia law based on the method used in that case for calculating the relevant interest rate.

In Defendant's Reply, it reasserts all its arguments that suggest that South Dakota law should apply. It then asserts that all the remaining claims should be dismissed as derivative of Counts I and II. Defendant mentions specifically that Count III should be dismissed because there is a valid agreement, and that Count V should be dismissed because the Debtor cannot yet file a claim for Defendant.

### III. Analysis

### a. *Counts I and II*

As to Counts I and II, the Court need not reach the issue of whether South Dakota law or Georgia law applies. Under South Dakota law, the Loan is not usurious, since South Dakota law imposes no limits on the interest rate that can be charged in these circumstances.[5] By contrast, Georgia law imposes a limit of five percent (5%) per month on the rate of interest that can be charged on a commercial loan under its criminal usury statute, O.C.G.A. § 7-4-18.

---

[5] The Debtor concedes this is the case. *See* Complaint, ¶11; Debtor's Memorandum of Law, fn. 2.

The Debtor asserts that Defendant charged a rate of approximately 66% per year. The Debtor does not explain in its Complaint how it made the relevant calculation, but from several references in its subsequent pleadings it is clear that it calculates that rate by reference to a six month (or 180 calendar day) period (*see* Debtor's Memorandum of Law, p. 7; Debtor's Reply, p. 5–6), rather than a 180 business day period expressly contemplated by the Agreement (*see* Agreement, p. 1 (Payment Schedule); p. 2, ¶4).[6] This mistake shortens the repayment period to 180 calendar days/six months. Dividing the aggregate amount of interest that the Debtor (incorrectly) determined to be paid under the Agreement ($33,000), by six, and then dividing it again by what the Debtor (also incorrectly) determined to be the principal amount of the loan ($100,000), yields a monthly interest rate of 5.5%, or an annual rate of 66%.

The fact that the Debtor divided by the wrong number of days is obvious from the Agreement. The term of the Loan is expressly NOT 180 calendar days—it is 180 business days. Converting those business days to calendar days yields at least 252 calendar days.[7] That change benefits Defendant. The Debtor also miscalculates the total interest, and the principal amount, both to its disadvantage.[8] Under Georgia law, for usury purposes, fees like the $1,999 fee charged to the Debtor here are added to interest and subtracted from principal.[9] Doing that in this case results in

---

[6] Repayment every calendar day is also not possible because the debits can only be made when banks are open (i.e. on business days).

[7] Assuming five business days per week, 180 business days is 36 weeks. 36 weeks is 252 calendar days. The actual period is actually a few days longer, because the foregoing does not account for holidays that do not fall on a weekend. A longer period would further benefit Defendant. Starting on July 11, 2018, the date of funding, and considering just Federal holidays, would result in a repayment period ending on March 27, 2019, or a period of 260 days. Finally, one additional day would need to be added to any of these periods, since the Agreement provides for 180 debits of $738 plus one final debit of $160. *See* Agreement, p. 1

[8] The Debtor does correct this principal and interest mistake, but not the date counting error, in the Debtor's Reply. Debtor's Reply, at 5-6.

[9] *Fleet Finance, Inc of Georgia v. Jones*, 263 Ga. 228, 430 S.E.2d. 352, 354 (1993); *Norris*, *supra*, at 243–244.

$34,999 in interest and $98,001 in principal.  Providing for the payment of $34,999 in interest over

252 days as consideration for borrowing $98,100 yields a per month charge, using the method

provided for in Georgia cases,[10] of 4.31% per month, or 51.67% per annum,[11] neither of which

violates O.C.G.A. § 7-4-18.

Based on the foregoing, Defendants' Motion to Dismiss as to Counts I and II should be

granted, and the Motion for Summary Judgment should be denied.

> **b.**        ***Count III***

Both parties agreed that if the Agreement is a valid contract, Georgia law would not allow

for a claim of unjust enrichment.  *See* Defendant's Memorandum of Law, p. 10 (citing cases);

Debtor's Memorandum of Law, p. 9 (acknowledging this statement "correctly states" the law).

Consequently, because of the holding above as to Counts I and II, the Motion to Dismiss should

also be granted as to Count III.

---

[10] The Georgia cases interpreting O.C.G.A. § 7-4-18 calculate interest by taking the gross amount of interest charged during the term of the loan (as adjusted by converting certain charges to interest for this purpose) and dividing by the original principal amount (as adjusted by subtracting those charges from the amount purportedly borrowed), and dividing that rate by the number of months of the term of the loan.  That creates a "monthly interest rate" that is then compared to the 5% statutory limit.  *Fleet, supra,* at 357; *see also Norris, supra,* at 244; *S&A Industries, Inc. v. Bank Atlanta,* 247 Ga.App. 377, 543 S.E.2d 743, 752–53 (Ga. App. 2000); *Ransom v. Fleet Finance Inc.* 219 Ga.App.2d. 817, 466 S.E.2d 686 (Ga. App. 1996).  This method of calculating an interest rate treats every loan as if the entire principal amount is outstanding for its entire term and ignores entirely the effect of any amortization (repayment) of the principal of the loan during the term on the effective interest rate charged.  If the statutory method of calculation took amortization into account, the rates calculated would be substantially higher.  Based on the reported Georgia cases, however, the statutory method does not appear to take amortization into account.

[11] This is slightly higher than the 47.8% calculated by Defendant in its pleadings (*see* Defendant's Opposition, p.4; Mages Affidavit, ¶12).  In making its calculation, Defendant used the same incorrect figures for principal ($100,000) and interest ($33,000) used by the Debtor.  Using those incorrect figures, Defendant calculated an interest rate, if the Loan had been for a calendar year, of 33%.  Defendant then explained that, assuming there are five business days per week, 180 business days is 36 weeks, which is 69% of a year.  Dividing the 33% annual rate by 69% yields Defendant's 47.8% figure.  Using the correct figures for principal ($98,001) and interest ($34,999) yields a rate for a year of 35.67%, which when divided by 69% equals 51.7%, or 4.31% per month.

### c.     Count IV

As noted previously, Defendant filed the Proof of Claim after the Motion to Dismiss and the Motion for Summary Judgment were filed.  In the Proof of Claim, Defendant asserts a secured claim of $76,850.  It asserts that this claim is fully secured, and that the relevant security interests are perfected by a UCC-1 financing statement filed on November 8, 2018 in Coweta County, Georgia (the "Financing Statement").

Because Counts I and II will be dismissed, any challenges to the secured status of the Proof of Claim based violations of usury laws are also hereby dismissed.  However, certain potential issues regarding the validity and amount of the secured claim asserted in the Proof of Claim remain,[12] such that the Debtor should now be permitted to amend Count IV to address the filed Proof of Claim and set forth precisely any remaining objections it may have to the secured claim asserted in the Proof of Claim.   Consequently, the Motion to Dismiss will be granted in part, and denied in part, as to Count IV.

### d.     Count V

As with Count IV, because Counts I and II will be dismissed, any challenges to the claim asserted in the Proof of Claim based on violations of usury laws are also hereby dismissed.  Also like with Count IV, the Debtor will be permitted to amend Count V to address the filed Proof of

---

[12] For example, the Proof of Claim asserts a fully secured claim.  The claim may be fully secured, partially secured, or entirely unsecured, based on the value of the collateral securing it and the relative priority of other claims secured by the same assets.  *See* 11 U.S.C. § 506(a).  The record in this case reveals that the Debtor has several other creditors that assert interests in some or all the same assets.  In addition, the Financing Statement is not in the name of Defendant, includes no reference to Defendant, and includes references to "Purchased Receivables" and a "Processor Agreement", which are elements not involved in the Loan as it has thus far been described to the Court.  Further, the collateral description in the Financing Statement appears to be copied from the granting language of a security agreement but does not match the granting language contained in the Agreement.  These discrepancies could suggest that the Financing Statement was not filed on behalf of Defendant and/or does not relate to the Loan.  The Debtor may address any issues it has with the secured claim of Defendant in an amended Count IV now that the Proof of Claim has been filed.

Claim and set forth precisely any remaining objections it may have to the claim asserted in the Proof of Claim.[13]   Consequently, the Motion to Dismiss will be granted in part, and denied in part, as to Count V.

  **e.**  ***Count VI***

  Both parties agree that the basic test of unconscionability "is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *R.L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966, 214 S.E.2d 360, 363 (1975).   Motion to Dismiss, pps. 12–13; Debtor's Memorandum of Law, p.11. The Debtor claims that the Agreement meets this standard primarily for two (2) reasons; (1) the Agreement provides for a usurious rate of interest, and (2) the Debtor really needed to loan proceeds and chose not to engage counsel to advise it regarding the Loan.   As to the former, the Court has found that the Loan is not usurious even under Georgia law.   As to the latter, it is not clear how the advice of an attorney would have been relevant to Ms. Dang and the Debtor in the alleged circumstances.   She purportedly had to have the money.   The only material thing that the Debtor seems to suggest that she would have been told by an attorney is that Defendant structured its Loan so that it would be enforceable—something Ms. Dang no doubt assumed when she signed the documents.   There is no suggestion that she did not otherwise understand the terms of the Loan— that the Debtor was going to get $98,001 and would have to pay $738 to Defendant every business day for 180 consecutive business days, would make one additional $160 payment, at which point the Loan would be repaid.   The Debtor also does not explain why its voluntary choice not to engage

---

[13] At minimum there appears to be a dispute as to the amount paid by the Debtor regarding the Loan. *Compare* Complaint, ¶22(b)(asserting payments of $70,510) *with* Proof of Claim, p. 26 (showing payments of $56,150, and additional payments that were reversed of $18,450).

counsel regarding the Loan would render the Loan unconscionable.  Consequently, based on the allegations of the Debtor to date, the claim of unconscionability could not be maintained, and the Motion to Dismiss should be granted as to Count VI.

The parties do not address, however, an issue noted above—that the method used by Georgia courts to determine usury can substantially understate the actual interest rate to be paid where, like here, the loan amortizes.[14]  The Loan has an interest rate around 50% if the rate is determined by the method used by the Georgia courts for the purposes of determining compliance with O.C.G.A. § 7-4-18.  If instead the interest rate on the Loan is determined based on the amount borrowed, the payment amount due on each business day, and the repayment period, the actual interest rate that amortizes the Loan fully is over 80%.  The Court will allow the Debtor to determine whether a loan with an interest rate of that magnitude is unconscionable under Georgia law, even if it is not usurious, and to amend Count VI to assert such a claim if it does.

## IV. Conclusion

Based on the foregoing, it is hereby **ORDERED** that the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows—Counts I, II, III and VI are dismissed, and Counts IV and V are dismissed to the extent they seek relief based on the alleged usurious nature of the Loan; and it is further

**ORDERED**, that the Debtor is permitted thirty (30) days from the date of entry of this Order to amend Counts IV, V and VI as set forth above; and it is further

**ORDERED**, that Defendant will have fourteen (14) days from the date of the filing of any amendments to Counts IV, V and VI to file an answer or otherwise respond to the amended Counts IV–VI of the Complaint; and it is further

---

[14] *See* fn. 10, *supra*.

11

**ORDERED** that the Motion for Summary Judgment is **DENIED**.

The Clerk is directed to serve a copy of this Order and Notice upon the Debtor, counsel for

the Debtor, Defendant, and counsel for Defendant.

**[END OF DOCUMENT]**